**STATE of Missouri, Respondent,**

v.

**James DIXON, Appellant.**

**No. WD 50292.**

Missouri Court of Appeals,
Western District.

Dec. 26, 1995.

As Modified Jan. 25, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied
March 26, 1996.

John M. Schilmoeller, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

· Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

SPINDEN, Presiding Judge.

After James Dixon had been arraigned in 1994 on charges of sodomy and sexual abuse and after the circuit court had appointed an attorney to represent him, a service worker with the Division of Family Services obtained inculpatory admissions from him during an interview while he was in jail awaiting trial. The service worker shared the information with police. The circuit court refused to suppress this evidence. We reverse and remand for a new trial.

The state accused Dixon in connection with an incident on April 1, 1994, involving a five-year-old girl. The state charged him with causing the girl to touch his penis and with touching her genital area through her panties. During a police interrogation on April 8, 1994, he told officers that, while playing a "tickling game" with the girl, his penis had slipped out of his pants. He denied knowing that his penis was uncovered before she touched it.

A DFS service worker, Kelli Heuer, interviewed Dixon on April 13, 1994, two days after he had been arraigned when Dixon was in custody and after counsel had been appointed to represent him. Before the interview, Heuer read to Dixon a form which said:

> During the investigation the [d]ivision will decide if abuse or neglect has occurred. The investigation may include collecting evidence, interviewing witnesses and family members and contacting persons who know the child and family. The [d]ivision will also offer assistance to families who are in need of services. The primary purpose of this investigation is not to look for evidence of a crime. However, the investigation could result in criminal prosecution and punishment.

She interviewed Dixon again on May 4, 1994, while he was still in custody, and again read the form to him. She did not ask him either time whether he was being represented by a lawyer or whether he wanted a lawyer present during the interview. She did not advise him of any of his constitutional rights.

During the two interviews, Dixon gave Heuer the same explanation he had given police. He added that he had a problem with sexual abuse. He also added that he had accidentally touched the victim's vaginal area because she had jerked while he was tickling her thigh during a "control game."

Heuer put these statements in a report to DFS and gave a copy to the Moberly police. The state used the statements to convict him of sexual abuse in the first degree. The circuit court, in a judge-tried case, acquitted Dixon of the sodomy charge. Dixon asserts on appeal that the circuit court's denial of his motion to suppress his statements to Heuer was wrong because admitting the statements into evidence violated his constitutional rights to due process, freedom from self-incrimination, and his guarantee of a lawyer's assistance.

██ The Sixth and Fourteenth Amendments to the United States Constitution guarantee that the government will make

available a lawyer to assist an indigent criminal defendant at any critical stage.[1] *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149 (1967). Arraignment signals the beginning of adversary judicial proceedings, so any post-arraignment efforts by the government to elicit information from an accused is a "critical stage" when the Sixth Amendment applies. *Michigan v. Jackson*, 475 U.S. 625, 629–30, 106 S.Ct. 1404, 1407–08, 89 L.Ed.2d 631 (1986). The Fifth Amendment to the United States Constitution is also implicated in a custodial interrogation by the government,[2] and its protection is applicable to a state criminal proceeding. *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980); *State v. Chatman*, 682 S.W.2d 82, 85 (Mo.App.1984). Also implicated is Article I, §§ 18(a) and 19, of the Missouri Constitution (1945).[3]

Dixon charges that Heuer, as a DFS case worker obligated to share the results of her investigation with the police, was "a government agent"; therefore, her failure to inform Dixon of his right to refuse to answer her questions and of his right to have a lawyer present to counsel him violated his federal and state constitutional rights. The state, relying on *State v. Brydon*, 626 S.W.2d 443, 449 (Mo.App.1981), responds that Heuer was "a private citizen" rather than a law enforcement officer.

The state reads *Brydon* too broadly. In *Brydon*, the defendant was neither charged

nor in custody when he made incriminatory statements to a DFS social worker in his residence. Nor was the DFS worker obligated by statute to share her information with police.[4] This court concluded:

> The [social] worker ... was [at the defendant's house] with permission and would have been obliged to leave without it. And although in the discharge of an official duty at the time, she was in no sense a prosecution officer. She was without authority to make a criminal investigation and undertook none albeit [DFS] was empowered to "report to the appropriate law enforcement authority" any result of investigation.... The statements to [the social worker] were as to a private individual.... It may be that the statements by [the defendant] to [the social worker] were the point of beginning for the prosecution ..., but that says no more than that any voluntary admission may lead to a criminal charge. *Id.* at 450–51. The court stressed that "the totality of circumstances" determined whether the inculpatory statements were voluntary. *Id.* at 451.

Dixon's case is a far cry from the situation encountered by the *Brydon* court.[5] Unlike the defendant in *Brydon*, Dixon had been charged, had been arraigned, was in jail, and had an attorney appointed to represent him when the DFS worker interrogated him. Moreover, Heuer was not working independently of the police. As mandated by

1. The Sixth Amendment says, "[T]he accused shall enjoy the right ... to have the Assistance of Counsel for his defence." In 1963, the U.S. Supreme Court ruled that the due process clause of the Fourteenth Amendment required appointment of a lawyer for an indigent defendant in any state criminal prosecution. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

2. The Fifth Amendment guarantees that "no person ... shall be compelled in any criminal case to be a witness against himself[.]"

3. Section 18(a) provides "[t]hat in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel[.]" Section 19 replicates the Fifth Amendment by guaranteeing "[t]hat no person shall be compelled to testify against himself in a criminal cause[.]"

4. Section 210.145.7, RSMo 1986, said, "As a result of its investigation, the local office of the division shall report a child's injuries or disabilities from abuse or neglect to the juvenile officer, and *may* make such report to the appropriate law enforcement authority." The General Assembly has amended the provision, now codified as § 210.145.11, to say, "Multidisciplinary services [including the services of law enforcement, the juvenile officer, the juvenile court, and other agencies] *shall* be used whenever possible in conducting the investigation[.]" (We added the emphasis.)

5. Even if we did not distinguish the *Brydon* case on the facts, we question its continued validity in the face of the General Assembly's extensive rewriting of Chapter 210, RSMo, to make DFS and law enforcement officials part of a joint, multidisciplinary investigatory team.

§ 210.145, RSMo 1994, she worked jointly, exchanging reports, with the police in investigating Dixon. Heuer had become a governmental agent in Dixon's prosecution.

■ No right is more pervasive than a criminal defendant's Sixth Amendment right to counsel. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." *United States v. Fulton,* 5 F.3d 605, 611 (2d Cir.1993). The right to counsel attaches after the initiation of adversarial judicial proceedings by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Michigan v. Harvey,* 494 U.S. 344, 353, 110 S.Ct. 1176, 1181, 108 L.Ed.2d 293 (1990); *State v. Parker,* 886 S.W.2d 908, 918 (Mo. banc 1994) *cert. denied,* ⸺ U.S. ⸺, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Meinhardt,* 900 S.W.2d 242, 246 (Mo.App.1995). "After charges have been filed, the Sixth Amendment prevents the government from interfering with the accused's right to counsel." *Illinois v. Perkins,* 496 U.S. 292, 299, 110 S.Ct. 2394, 2399, 110 L.Ed.2d 243 (1990). The government must refrain from affirmatively taking any action which, in any manner, circumvents the defendant's right to assistance of counsel, including deliberately eliciting incriminating evidence from him. *See Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985); *United States v. Kidd,* 12 F.3d 30, 32 (4th Cir.1993).

■ Heuer acted deliberately without regard for Dixon's constitutional right to assistance of counsel. She testified at the suppression hearing:

Q. [Dixon's attorney:] Did you ever attempt, before talking to Mr. Dixon on April 13, to find out whether or not Mr. Dixon had an attorney?

A. No.

Q. So it didn't matter to you?

A. It is the DFS policy that I interview the perpetrator.

Q. It didn't matter whether he had an attorney or not, you were still going to talk to him?

A. Yes.

Q. And the same thing I take it took place on May 4th, did that interview take place at the jail?

A. Yes.

Q. Did you ascertain whether or not he had an attorney?

A. No.

Heuer acted in contravention of the state's affirmative duty to respect and to preserve Dixon's right to counsel. Not only did she not notify Dixon's attorney before initiating her interrogation, she did not advise him of any his constitutional rights. What she did tell him was misleading by suggesting that the information he gave her might lead to criminal prosecution against him. She knew that a prosecution had already been initiated and that the information she obtained would be shared with the police.

■ Clearly, Heurer's acts violated Dixon's right to counsel. Once an accused invokes his Sixth Amendment right to counsel, the state cannot subsequently initiate an interrogation of the accused unless his or her attorney is present or has been notified. *State v. Owens,* 827 S.W.2d 226, 228 (Mo. App.1991). In this case, Heurer was obligated to heed the same procedural safeguards as those imposed on the prosecutor and the police.

The state emphasizes that Heuer's primary purpose was to protect the victim. Although true, this does not adequately address the fundamental right to counsel. The state has not shown that giving appropriate recognition to the right to counsel would overwhelm victim protection to such a degree as to justify denying an accused the right to be specifically advised of his right to counsel.

■ The state's argument that Heuer did not deliberately seek incriminating evidence from Dixon is not persuasive. If the state does more than merely listen, it acts deliberately. *See Kuhlmann v. Wilson,* 477 U.S. 436, 459, 106 S.Ct. 2616, 2629, 91 L.Ed.2d 364 (1986). When Heuer affirmatively questioned Dixon about the accusations of sexual abuse, she deliberately elicited statements from him.

The state urges us to presume that, because this case was tried without a jury, the judge did not rely on Dixon's statement to Heuer. Indeed, the Supreme Court of Missouri has instructed that an appellate court should presume that the court, in a court-tried case, did not rely on any inadmissible evidence and that its admission is not prejudicial. *State v. McMillin,* 783 S.W.2d 82, 96 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Moreover, the United States Supreme Court has said that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). To rely on this principle, however, the state must demonstrate beyond a reasonable doubt that the challenged evidence did not contribute to Dixon's conviction. *State v. Fuente,* 871 S.W.2d 438, 443 (Mo. banc 1994) (*citing Arizona v. Fulminante,* 499 U.S. 279, 289, 111 S.Ct. 1246, 1253, 113 L.Ed.2d 302 (1991)). The state did not establish that Dixon's statements to Heuer did not contribute to his conviction. Dixon's admission to Heuer that he had a problem with sexual abuse was extremely incriminating in overcoming Dixon's defense that the touchings were accidental and unintentional. Because of the nature of Dixon's admission and the extremely limited evidence presented by the state concerning Dixon's intentions, we deem the presumption that the circuit court did not rely on the admission to be rebutted. We conclude that the constitutional violation did not constitute harmless error.

Because we reach this conclusion, we need not consider the other points raised by Dixon. We reverse the circuit court's judgment on the sexual abuse charge and remand the case for a new trial on that charge.

All concur.