**STATE of Missouri, Respondent,**

**v.**

**Dennis M. ESHNAUR, Appellant.**

**No. WD 60055.**

Missouri Court of Appeals, Western District.

June 10, 2003.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, MO, Philip M. Koppe, Assistant Attorney General, Kansas City, MO, for Respondent.

Andrew A. Schroeder, Appellate Defender, Kansas City, MO, for Appellant.

Before HOWARD, P.J., and LOWENSTEIN and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

Dennis M. Eshnaur appeals from his conviction of trafficking drugs in the first degree, § 195.222.[1] Eshnaur's sole point on appeal is that the trial court erred in overruling his motion to suppress evidence and related objections to the admission of evidence linked to the manufacturing of methamphetamine and seized during the execution of a search warrant stemming from an affidavit that referred to observations, regarding an item, that the court determined to be the product of an illegal search.

We affirm.

## Facts

Shortly after 10:00 p.m. on the evening of June 16, 2000, several Kansas City, Missouri, police officers stopped two vehicles near Truman and Bales after the occupants of the vehicles had been involved in a disturbance. The police separated the parties and learned that the disturbance had developed over a woman who was not an occupant of either vehicle. According to the combatants, this woman, who was described as 18 to 20 years old, was at Appellant Dennis Eshnaur's house, located at 4314 East 9th Street in Kansas City.

Three police officers, including Officer Joseph Rooney, responded to that address. When they arrived, they noticed that the structure consisted of a garage that faced the street, with living quarters on the upper level. The building, which was owned by Eshnaur, had been posted by the City of Kansas City as "unfit for human habitation" by securing a note to the exterior of the building stating that it could not be lived in. It was first posted in October 1997 because it lacked essential services. It was re-posted in June 2000 because a methamphetamine laboratory had previously been discovered there. Pursuant to Section 56–34 of the Property Maintenance Code of Kansas City, it is illegal to occupy property that has been posted as unfit for human habitation without a certificate of occupancy from the city. KANSAS CITY, MO., CODE OF ORDINANCES § 56–34 (1994).

The officers knocked on the front door and, eventually, Eshnaur and a woman named Tammy Andrade came to the door. As they were speaking to one of the other officers, Officer Rooney learned that the residence had been posted by the Drug Abatement Response Team ("DART") as a "drug house" because it had been used to manufacture methamphetamine. Officer

---

1. All statutory references are to RSMo 2000.

Rooney was aware that, since the residence had been posted as uninhabitable, no one was to be on the premises without a work permit.

The officers asked Eshnaur if anyone else was inside the house, because they were interested in locating the woman who had been the cause of the disturbance they were investigating. Eshnaur told the officers there was no one else inside the house. The officers asked Eshnaur if he would allow them to look inside to confirm that no one else was inside, and Eshnaur told them he "didn't mind."

When Officer Rooney entered Eshnaur's house, he immediately observed a white plastic bag lying on a table. Inside the bag were two metal Acetone canisters and a bottle of Heet. Based on his training and experience as a law enforcement officer, Officer Rooney knew that those items were used in the manufacture of methamphetamine.

As Officer Rooney and the other officers walked through the house to ensure that it was unoccupied, they observed a "stand-up cabinet" in the living room area. The door on the left side of the cabinet was partially open, far enough for Officer Rooney to observe a "big apple cider jar full of . . . a cloudy liquid." Officer Rooney then opened the right side of the cabinet "to make sure nobody was laying on that side." When he opened it, he saw a brown glass plate containing some white residue and other items that could be commonly used to produce methamphetamine. Officer Rooney, based upon his training and experience, believed that all of the items he observed in the cabinet were "products used in the manufacture of methamphetamines."

The officers left everything inside the house, and, after checking the basement to determine if there was anyone down there,

left the house and notified their district sergeant of their findings.

At approximately 5:30 a.m. the next morning, the police obtained a search warrant to search Eshnaur's residence. They executed the warrant about half an hour later.

In the bathroom of Eshnaur's home, police found four boxes of cold medication containing pseudoephedrine hydrochloride. In the area of the living and dining rooms, they discovered a paper sack containing "some white pills," a folded piece of paper containing a red powdery substance, and a trash bag containing a canister of Acetone, a funnel, used coffee filters, and what appeared to be red phosphorous residue.

A more thorough examination of the partially open cabinet in the living room disclosed additional coffee filters, chemicals, a glass jar containing an unknown substance, a quart jar containing an unknown substance, various baking dishes containing an unknown substance, a flask with a stained coffee filter containing an unknown substance, and a painted antifreeze jug containing an unknown substance.

A search of Eshnaur's bedroom resulted in the discovery of syringes, baggies, glass smoking pipes and a hot plate. In the basement, police found a 55–gallon barrel that had been converted into a stove. Inside the barrel were blister packs of what appeared to be pseudoephedrine, and baggies that were stained with what appeared to be iodine.

A laboratory analysis of the "two-layer" liquids found in five items of glassware disclosed that they contained various amounts of amphetamine and methamphetamine. Other layers of these two-layered liquids contained ephedrine. An analysis of the residue found on the coffee filters showed that it contained various

amounts of amphetamine, methamphetamine, or red phosphorous. Red phosphorous, ephedrine, and iodine are the three main ingredients needed to manufacture methamphetamine.

Eshnaur's fingerprints were found on a 125–millimeter flask and a one-quart glass jar seized from his home during the search.

The State charged Eshnaur with one count of trafficking drugs in the first degree, § 195.222. The State also charged Eshnaur as a prior and persistent drug offender.

Eshnaur filed a motion to suppress evidence, in which he argued that all the evidence seized from his residence had to be suppressed because the search and seizure was made without probable cause, any consent obtained was coerced and the ensuing search was excessive, and any warrant obtained was predicated on an illegal search and seizure of the premises.

The trial court denied Eshnaur's motion to suppress. The court concluded that in searching for an individual in Eshnaur's residence, it was illegal for Officer Rooney to open the side of the cabinet in which he found the brown plate with the white powdery substance. However, the court further concluded that the search warrant would have been granted without the information about the brown plate being included in the affidavit.

Following a bench trial, Eshnaur was found guilty of trafficking drugs in the first degree and sentenced to fifteen years' imprisonment. This appeal follows.

## Standard of Review

In *State v. West*, 58 S.W.3d 563, 567–68 (Mo.App. W.D.2001), we stated the applicable standard of review to be as follows:

This court's review of a trial court's decision concerning a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." The decision of the trial court will be reversed only if it is clearly erroneous and this court is "left with a definite and firm belief a mistake has been made." This court will view all evidence and any reasonable inferences therefrom in the light most favorable to the ruling of the trial court. "In reviewing the trial court's ruling on [a motion to suppress], this [c]ourt considers the record made at the suppression hearing as well as the evidence introduced at trial." ... "At a suppression hearing, the State bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled."

(Citations omitted.)

## Argument

Eshnaur's sole point on appeal is that the trial court erred in overruling his motion to suppress evidence and his objections that were grounded in the aforesaid motion, to the admission of State's Exhibits 6a, 7–47, and 51–52, all of which were items of evidence or photographs thereof linked to the manufacturing of methamphetamine and seized during the execution of a search warrant stemming from an affidavit that referred almost entirely to observations that the court determined to be the product of an illegal search.[2] Eshn-

---

**2.** While Eshnaur contends that the affidavit "referred almost entirely to observations that the court determined to be the product of an illegal search," the record indicates, and the trial court implicitly determined, that the only observation in the affidavit that resulted from what the trial court deemed an illegal search was the observation of the brown glass plate with the white powdery residue.

aur contends the evidence should have been suppressed as fruit of the poisonous tree, in that when the observations stemming from the illegal search are removed from the probable cause equation, there is not a substantial basis for concluding that a fair probability existed that contraband or evidence of a crime would be found in Eshnaur's residence.

The only aspect of the trial court's ruling that Eshnaur challenges as erroneous is the court's conclusion that two canisters of Acetone, a can of Heet, and a large glass jug with a cloudy liquid in it, together with the residence's history as a "drug house," amounted to probable cause sufficient to support the issuance of a search warrant. Eshnaur points to the evidence that the vast majority of uses of Acetone are perfectly lawful, and that both Heet and Acetone are common household products that are legal to own.

The Fourth Amendment to the United States Constitution guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." "[T]he Missouri Constitution provides 'essentially the same protections found' in the Fourth Amendment." *State v. Yahne,* 943 S.W.2d 741, 747 (Mo.App. W.D.1997) (quoting *State v. Sweeney,* 701 S.W.2d 420, 425, n. 4 (Mo. banc 1985)); *see* Mo. CONST. art. 1, § 15. The magistrate must determine probable cause from the totality of the circumstances, making a "practical, commonsense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found." *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The determination of whether probable cause exists to issue a warrant is made from all the circumstances set out in the application for the warrant and its accompanying affidavit. *State v. Woodworth,* 941 S.W.2d 679, 695 (Mo.App. W.D. 1997).

While the meaning of probable cause is a legal issue, its existence in a particular case is a question of fact. *Berry,* 801 S.W.2d at 66. "Thus, appellate review of whether the issuance of a search warrant lacked the requisite probable cause to render the subsequent search and seizure illegal so as to exclude the evidence at trial is *not de novo.*" *State v. Dowell,* 25 S.W.3d 594, 604 (Mo.App. W.D.2000). "The task of the appellate court is to determine, upon review of the four corners of the supporting affidavits, whether the judge had a substantial basis for concluding that probable cause existed." *State v. Dawson,* 985 S.W.2d 941, 948 (Mo.App. W.D.1999). "We give great deference on review to the initial judicial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous." *Berry,* 801 S.W.2d at 66.

Detective Michael Hosack executed the affidavit in support of the warrant. The affidavit provides as follows:

On June 16, 2000, at about 2250 hours Kansas City Police officers Rooney # 651, Powell # 652, and Frederick # 655 responded to 4314 E. 9th St. reference to a call for service on an individual who was involved in a domestic disturbance at the address. The officers knocked at the back second floor door, which was to an apartment, but received no answer. Officer Frederick responded to the front of the building and knocked on a window and at that time two subjects came out the back second floor door.

The two subjects were identified as Dennis M. Eshnaur W/M 10–31–63, and Tammy E. Andrade W/F 02–23–71. Of-

ficer Rooney confirmed that the residence at 4314 E. 9th was posted and closed by DART due to the recent seizure and contamination of a clandestine Methamphetamine lab at the address. Both subjects were arrested for illegal presence in a posted building. At this time the officers received verbal permission from Eshnaur (owner) to check for any further persons inside the residence. During the sweep of the kitchen, officer Rooney observed in plain view, two metal cans of Acetone, a bottle of Heet gas additive. In the living room, in plain view, in a cabinet with open doors, Officer Rooney observed a large glass jug or flask containing a cloudy liquid, and a brown glass plate containing a white powdery residue. Based upon the Affiant's training and experience these items are consistent with the manufacture of Methamphetamine.

Dennis Eshnaur currently shows to be on state supervision through Missouri Probation and Parole for the manufacture of a controlled substance.

Information provided to Detective Michael Hosack at the scene indicated the following:

> The black over blue Bronco parked in the driveway belonged to Dennis Eshnaur, but the license plates on the Bronco belonged and registered to Tammy Andrade. Ms. Andrade had driven a gray 1986 Ford Escort bearing Missouri license # 520–BWM, to the scene a short time before the police arrived. The vehicle is currently parked in the driveway of the residence.

Ms. Andrade stated to officer Roonie [sic] that she just stopped by to use the bathroom at the residence.

This occurred in Kansas City, Jackson County, Missouri.

\*     \*     \*     \*     \*     \*

While illegally obtained evidence cannot be used in an affidavit to establish the requisite probable cause for the issuance of the warrant, the mere fact that it is included in the affidavit does not invalidate the warrant. *Dowell*, 25 S.W.3d at 606. "The 'ultimate inquiry is not whether the affidavits contained allegations based upon illegally obtained evidence but whether, if setting aside all tainted allegations, the independent and lawful information stated in the affidavits suffices to show probable cause.'" *Id.* (quoting *State v. Macke*, 594 S.W.2d 300, 309 (Mo.App.1980)). Thus, even assuming, arguendo, that the evidence concerning the brown plate was illegally obtained, we may not reverse unless we find that the affidavit, excluding the information about the plate, failed to establish the requisite probable cause for the issuance of the search warrant.

Excluding the information concerning the plate, the affidavit stated that 1) the residence had been "posted and closed by DART due to the recent seizure and contamination of a clandestine Methamphetamine lab at the address"; 2) the police observed in the kitchen, in plain view, two cans of Acetone and a bottle of Heet gas additive; 3) the police observed in the living room cabinet, in plain view, a large glass jug or flask containing a cloudy liquid; 4) based on the officer's training and experience, these items were consistent with the manufacture of methamphetamine; and 5) Eshnaur was, at the time of the search, on state supervision through Missouri Probation and Parole for the manufacture of a controlled substance. We find that this was sufficient information to establish probable cause for issuance of the warrant. Thus, the trial court did not err in overruling Eshnaur's motion to suppress the evidence obtained from his residence pursuant to the warrant. The point is denied.

The judgment of the trial court is affirmed.

LOWENSTEIN and HARDWICK, JJ., concur.