**STATE of Missouri, Respondent,**

v.

**Michael L. FARRIS, Appellant.**

**No. WD 61802.**

Missouri Court of Appeals, Western District.

Jan. 27, 2004.

rogation on another offense eight months later, after his pretrial release on bond for the burglary charge. He thus asserts that the trial court erred by refusing to suppress testimony regarding statements made by him over the course of custodial interrogation on the second charge, even though he had waived his *Miranda*[1] rights. In a case of first impression in Missouri, he contends that the invocation of rights pursuant to *Miranda* need not be made during the course of a custodial interrogation but may be made at anytime the defendant is in custody. The State argues, in response, that Farris was not being interrogated at the time he filed the written invocation of his *Miranda* rights and that, furthermore, there had been a lapse in custody when he was released on bond that required him to reassert those rights in the subsequent interrogation.

We hold that an anticipatory invocation of Fifth Amendment rights prior to a custodial interrogation does not bar use of a statement made months later after a *Miranda* waiver during actual custodial interrogation and that Farris was not in custody under his prior charge at the time police initiated interrogation.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 1998, Sophia Szymczak called the police to report a burglary at her home at 1513 Topping Avenue in Kansas City, Missouri. Appellant Michael Farris was identified as a suspect on the basis of fingerprints left at the scene. After being contacted by a police detective, Farris voluntarily came to a police station to meet with the detective. In the course of that meeting, Farris signed a *Miranda* waiver, and, after interrogation, made a written statement confessing his involvement in the crime. Farris was released at the time

Nancy A. McKerrow, State Public Defender Office, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris and Karen L. Kramer, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Appellant Michael L. Farris appeals his convictions of murder in the first degree, assault in the first degree, and armed criminal action. He contends that his anticipatory written invocation of his Fifth Amendment right to counsel while in custody on a burglary charge barred his inter-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

but was arrested a week later regarding the offense.

On December 30, 1998, while Farris was in custody on the burglary charge, he signed a document prepared by his public defender denominated "Defendant's Assertion of His Fifth Amendment Rights." In that document, he stated that he did not wish to be subject to further interviews or interrogation and that he would only waive his rights through a written waiver signed by both himself and his public defender. That document was filed in the pending criminal case, and copies were served upon the prosecuting attorney and the director of the jail.

Farris remained in jail until May 18, 1999, when he was released on bond subject to the electronic home detention program. Nearly four months later, on September 3, 1999, Farris murdered Szmyczak in her home. Farris was discovered before leaving the scene by Alfredo Arzaga, an illegal immigrant who was living with Szmyczak at the time. After alerting the next-door neighbor to call 911, Arzaga and another neighbor pursued Farris. The police became involved in the pursuit a short time later and arrested Farris many blocks away from the murder scene.

After being taken to the station following his arrest, Farris signed another *Miranda* waiver. He was interrogated through the evening of September 3, 1999, and into the following morning. Farris did not make any written statement, nor was any portion of the interrogation recorded. Testimony indicated that Farris initially

denied involvement with the crime but, nine-and-one-half hours after being taken into custody, stated, "I was in that house; I sure the fuck was." [2]

Farris sought to suppress the statements he made during the September 3–4 interrogation. In addition to arguing that the statements were elicited under duress and coercion,[3] he contended that the statements were obtained in violation of the express, written assertion of rights he made on December 30, 1998. After holding a hearing on the issue, the trial court denied Farris' motion to suppress and permitted the police detective to testify at trial regarding Farris' statements during the interrogation. The detective's written report regarding the interrogation was also admitted into evidence.

At the conclusion of trial, the jury found Farris guilty of the offenses of murder in the first degree, assault in the first degree, and armed criminal action. He was sentenced to life imprisonment without parole, fifteen years in prison, and life imprisonment, respectively, with regard to the convictions, with the sentences to run consecutively. The present appeal follows.

### Discussion

In his sole point on appeal, Farris contends that the trial court erred in admitting testimony and other evidence regarding the statements made in the September 3–4 interrogation. Specifically, he claims that the interrogation violated his constitutional rights, given his earlier written assertion of those rights while in custody on the burglary charge, and that the police

---

**2.** This was not the only evidence tying Farris to the murder scene. Arzaga's trial testimony identified Farris as the individual he discovered in Ms. Szmyczak's home. Farris was also placed at the scene by DNA evidence in the form of blood left at the scene when he apparently cut himself while breaking a window.

When he was apprehended, he was also found in possession of items taken from Szmyczak's home, such as watches and her late husband's gold teeth.

**3.** He does not reiterate that argument on appeal.

could not initiate interrogation regarding the murder without first providing Farris with access to counsel.

The State raises three arguments in opposition to Farris' contentions. First, the State argues that Farris waived those rights by signing the *Miranda* waiver at the beginning of the September 3–4 interrogation. Second, the State takes the position that the written assertion of rights was ineffective because Farris was not undergoing custodial interrogation at the time it was executed. Third, the State contends that the September 3–4 interrogation did not abrogate that assertion of rights because of the subsequent extended period during which he was not in police custody.

"A trial court's ruling on a motion to suppress will not be reversed if supported by substantial evidence." *State v. Gilbert,* 103 S.W.3d 743, 750 (Mo. banc 2003). We view the evidence presented at the suppression hearing and at trial, together with all reasonable inferences that may be drawn therefrom, in the light most favorable to the trial court's determination. *See State v. Eshnaur,* 106 S.W.3d 571, 574 (Mo.App.2003). We will reverse only if we conclude that the trial court's determination is clearly erroneous and we are left with a definite and firm belief that a mistake has been made. *Id.*

■ Generally speaking, once a criminal defendant has asserted his constitutional rights to speak with an attorney, all interrogation of the defendant must cease until such time as counsel is made available to him. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Interrogation or other questioning may not resume "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 485, 101 S.Ct. 1880. In those circumstances where the accused initiates such contact, statements that an individual makes remain inadmissible unless they are the result of a knowing and voluntary waiver of the previously asserted right. *See Oregon v. Bradshaw,* 462 U.S. 1039, 1045, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). This right is derived from the Fifth Amendment right against self-incrimination. *See McNeil v. Wisconsin,* 501 U.S. 171, 176, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).[4]

*Was the Written Invocation of Farris' Rights an Effective Invocation of his Fifth Amendment Right to Counsel?*

■ Farris argues, first, that his written assertion of Fifth Amendment Rights was an effective assertion of those rights even though he was not undergoing interrogation at that time. He contends that neither *Miranda* nor *Edwards* explicitly require that the assertion be made at the time of interrogation. He correctly notes that the *Edwards* rule concerning Fifth Amendment rights is not offense-specific and once the *Miranda* right to counsel is invoked for one offense the suspect cannot be reapproached regarding any other of-

---

4. There is also a right to counsel under the Sixth Amendment. The express right to counsel contained in the Sixth Amendment attaches at the initiation of adversary judicial proceedings and is offense-specific. *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991); *State v. Reasonover,* 714 S.W.2d 706, 718 (Mo.App. 1986). As such, an invocation of the Sixth Amendment right to counsel does not bar police from initiating interrogation with regard to unrelated offenses where charges have not yet been filed. *See State v. Williams,* 922 S.W.2d 845, 851 (Mo.App.1996). As formal proceedings had not yet been brought with regard to the murder, Farris' Sixth Amendment right to counsel had not yet attached. Thus, our analysis concerns only his Fifth Amendment right to counsel.

fense unless counsel is present. *Arizona v. Roberson,* 486 U.S. 675, 682, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). *See also State v. Blackman,* 875 S.W.2d 122, 137 (Mo.App.1994). Thus, if Farris' anticipatory invocation of his Fifth Amendment right to counsel was effective, the fact that Farris was advised of his *Miranda* rights in the murder interrogation and waived them would be of no consequence. *Edwards,* 451 U.S. at 484, 101 S.Ct. 1880.

Farris specifically relies upon language in the dissenting opinion in *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), and Justice Scalia's response to it, in support of his position. That dissent predicted that, in response to the majority opinion, competent counsel could be expected to advise their clients to make a statement expressly invoking both the Fifth and Sixth Amendment rights to counsel. *Id.* at 184, 111 S.Ct. 2204 (Stevens, J., dissenting). Justice Scalia responded to that argument via a footnote in the majority opinion, indicating that "[w]e have in fact never held that a person can invoke his *Miranda* rights anticipatorily in a context other than 'custodial interrogation....' " *Id.* at 182 n. 3, 111 S.Ct. 2204. Farris views these passages as suggesting the very procedure he followed here with his anticipatory assertion of Fifth Amendment rights and that it is an open question whether the Fifth Amendment right to counsel can be invoked outside the context of a custodial interrogation.[5]

The State argues that Farris misinterprets *McNeil* and other Fifth Amendment cases. The State contends that Farris is essentially arguing that once a suspect invokes his rights he can never be questioned again about anything. Farris does not respond to this argument or suggest any event or reason for terminating the Fifth Amendment invocation at some subsequent time.[6] The State points to substantial authority rejecting this contention. See for example, *United States v. LaGrone,* 43 F.3d 332, 338 (7th Cir.1994); *Alston v. Redman,* 34 F.3d 1237, 1244 (3rd Cir.1994); *United States v. Thompson,* 35 F.3d 100, 104 (2nd Cir.1994); *United States. v. Wright,* 962 F.2d 953, 956 (9th Cir.1992). The State also points out that the Supreme court in *McNeil* noted it has never held that Fifth Amendment rights can be asserted in a context other than custodial interrogation and said that "[m]ost rights must be asserted when the government seeks to take the action they protect against." *McNeil,* 501 U.S. at 182 n. 3, 111 S.Ct. 2204. Farris points to no authority and makes no persuasive argument for a rule permitting such an anticipatory assertion in a non-custodial interrogation context. Such a rule would overlay the current requirements with a layer of considerations of known or even unknown

---

**5.** *McNeil* involved the question of whether an invocation of the offense-specific Sixth Amendment right to counsel in one case also constituted an assertion of Fifth Amendment rights to counsel for purposes of police initiated interrogation regarding another offense. If so, any subsequent waiver of *Miranda* rights during police-initiated questioning regarding another offense would be invalid under *Edwards.* 501 U.S. at 174, 111 S.Ct. 2204. The Court in *McNeil* rejected McNeil's argument for a clear rule making no distinction between the Fifth and Sixth Amendment rights to counsel.

**6.** There is little legal rationale, absent a rejection of years of Court distinction between the Fifth and Sixth Amendment rights to counsel, for a position that the Fifth Amendment invocation would "expire" upon termination of the case wherein the anticipatory invocation was made. Nor would such a rationale cover anticipatory invocations by individuals not even identified as suspects or those who were not charged with an earlier offense and, therefore, not having ripe Sixth amendment rights.

previous invocations, issues as to whether those invocations have ended or lapsed, and the potential necessity of obtaining two *Miranda* waivers. These complications and additional requirements are to be compared with the limited benefits to suspects, generally, who can still, after proper warning at the actual time of interrogation, assert their right to counsel. We reject Farris' argument that such an anticipatory invocation is effective.

*Does a Break in Custody Permit the State to Initiate an Interrogation?*

■ Nevertheless, Farris may still prevail under *Edwards* if he was still in custodial status on his original burglary charge at the time of the September interrogation regarding the murder. Under *Edwards,* his prior invocation of the Fifth Amendment right to counsel while in custody on the burglary charge would prohibit the police from further interrogating Farris regarding that charge or any other offense in the absence of counsel. *Minnick v. Mississippi,* 498 U.S. 146, 150, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). The principle articulated in *Edwards* is not absolute, however. The State argues that there was a break in Farris' custodial status when he was released on bond and, therefore, that the *Miranda* and *Edwards* principles do not apply to make his subsequent interrogation presumptively involuntary. In *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court stated (in dicta):

> If the police do subsequently initiate an encounter in the absence of counsel (**assuming there has been no break in custody**), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.

*Id.* at 177, 111 S.Ct. 2204 (emphasis added).

We have identified no reported Missouri case that has addressed the issue of whether the rule of *Edwards* applies when there has been a break in custody; therefore, the issue appears to be one of first impression in this state. A number of federal circuit and state supreme courts, both prior to and since *McNeil,* have taken the position that the rule in *Edwards* does not apply when there has been a break in custody. *See, e.g., United States v. Harris,* 221 F.3d 1048, 1052–53 (8th Cir.2000); *Kyger v. Carlton,* 146 F.3d 374, 380–81 (6th Cir.1998); *United States v. Bautista,* 145 F.3d 1140, 1150 (10th Cir.1998); *United States v. Barlow,* 41 F.3d 935, 945–46 (5th Cir.1994); *United States v. Hines,* 963 F.2d 255, 257 (9th Cir.1992); *Dunkins v. Thigpen,* 854 F.2d 394, 397–98 (11th Cir. 1988); *McFadden v. Garraghty,* 820 F.2d 654, 661 (4th Cir.1987); *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 125 (7th Cir.1987); *People v. Storm,* 28 Cal.4th 1007, 124 Cal.Rptr.2d 110, 52 P.3d 52, 61–62 (2002); *People v. Trujillo,* 773 P.2d 1086, 1092 (Colo.1989); *Wilson v. State,* 264 Ga. 287, 444 S.E.2d 306, 309 (1994); *Commonwealth v. Galford,* 413 Mass. 364, 597 N.E.2d 410, 413–14 (1992); *Willie v. State,* 585 So.2d 660, 666–67 (Miss.1991); *State v. Warren,* 348 N.C. 80, 499 S.E.2d 431, 440–41 (1998); *Commonwealth v. Wyatt,* 455 Pa.Super. 404, 688 A.2d 710, 712–13 (1997); *Commonwealth v. Gregory,* 263 Va. 134, 557 S.E.2d 715, 723–24 (2002); *State v. McKenzie,* 197 W.Va. 429, 475 S.E.2d 521, 530 (1996).

■ We follow those other courts in holding that a break of custody removes the concerns that underlie the prophylactic principles of *Miranda* and *Edwards.* When the accused "is released from police custody, he is no longer subject of the inherently compelling pressures of custodi-

al interrogation and his Fifth Amendment rights which the *Miranda–Edwards* prophylactic rule was designed to protect are no longer in jeopardy." *Wyatt,* 688 A.2d at 713.

 This holding does not permit police abuse of his right to counsel concerning the offense for which he is on pretrial release. Upon the initiation of adversary proceedings, the Sixth Amendment right to counsel attaches. *See State v. Dixon,* 916 S.W.2d 834, 835 (Mo.App. 1995) (citing *Michigan v. Jackson,* 475 U.S. 625, 629–30, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). "Once an accused invokes his Sixth Amendment right to counsel, the state cannot subsequently initiate an interrogation of the accused unless his or her attorney is present or has been notified." *State v. Dixon,* 916 S.W.2d 834, 837 (Mo.App.1995) (citing *State v. Owens,* 827 S.W.2d 226, 228 (Mo.App.1991)). Thus, a defendant's assertion of the Sixth Amendment right to counsel would prevent reinterrogation about the pending offense.[7]

 By contrast, the rule urged by Farris would invalidate an otherwise voluntary confession obtained after a *Miranda* waiver because of some written assertion of rights made months or even years earlier of which the authorities might even be unaware. In situations where there has been a break in custody, we see little real purpose or constitutionally necessary protection for requiring an interrogating officer who obtains a *Miranda* waiver to also inquire as to any previous assertion of rights and obtain a waiver of that invocation as well. We hold, therefore, that the initiation of police interrogation is not barred by a prior assertion of the Fifth Amendment right to counsel when the defendant has been released from custody.

Having adopted that principle leads us to our final inquiry: Was there a break in custody between Farris' invocation of his rights to counsel on December 30, 1998, and his subsequent interrogation on September 3 and 4, 1999? Upon the record before us, we conclude that a break in custody had taken place.

 In conducting that inquiry, we look to precedents defining "custodial interrogation" for guidance. Determining whether an individual is "in custody" entails examining the totality of the circumstances involved. *See State v. Werner,* 9 S.W.3d 590, 595 (Mo. banc 2000). The result of the inquiry will depend on the degree of restraint involved and whether a reasonable person in the accused's position "would have understood the situation to be one of custody." *Id.*

Here, Farris had been released on bond for an extended period, though subject to the provisions of an electronic home detention program. The record reveals that while Farris was to be supervised through electronic monitoring, he was permitted to leave his residence for work or by leave of the Board of Probation and Parole's Pretrial Release Office. Whether Farris was subject to other limitations or conditions is not clear, based upon the record on appeal. Whatever those restrictions, however, Farris was apparently not impeded from leaving his residence for the purposes of breaking into Ms. Szmyczak's home for the purpose of murdering her.

While we have found no case directly on-point with the facts of the present case, the United States Court of Appeals for the

---

**7.** As discussed previously, the Sixth Amendment right to counsel applies only to interrogation about offenses for which adversary proceedings been initiated and not to unrelated offenses. *See* note 4, *supra.*

Tenth Circuit has held that an individual released on bond is no longer "in custody" under a custodial interrogation analysis. *See United States v. Geittmann,* 733 F.2d 1419, 1425 (10th Cir.1984). Similarly, the Virginia Supreme Court has held that a defendant's release on bond was a "break in custody" and that the police did not violate the *Miranda–Edwards* rule by taking the defendant back into custody some time later and interrogating him again. *See Commonwealth v. Gregory,* 263 Va. 134, 557 S.E.2d 715, 717, 724 (2002).

Viewing the facts contained in the record available to us in the light most favorable to the trial court's ruling, we hold that when Farris was released on bond, a "break in custody" occurred that dissolved Farris' protections against further police interrogation under the *Miranda–Edwards* rule. Accordingly, when Farris was re-arrested on September 3, he was obligated to reassert his rights to remain silent and to counsel to reestablish the protections provided by *Miranda* and *Edwards.* Farris did not do so, instead signing a waiver of those rights.

Under those circumstances, the trial court did not err in denying Farris' motion to suppress the statements he made during the September 3–4 interrogation. Point denied.

The judgment and conviction is affirmed

EDWIN H. SMITH, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.