Present:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 010636

JASON WAYNE GREGORY

OPINION BY JUSTICE DONALD W. LEMONS<br>January 11, 2002

JASON WAYNE GREGORY

v.  Record No. 011028

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Jason Wayne Gregory ("Gregory") was tried separately for two sets of unrelated offenses.  One trial involved charges of capital murder, robbery, and two counts of use of a firearm in the commission of a felony (the "murder offenses").  The remaining trial involved charges of statutory burglary, grand larceny, and vandalism (the "burglary offenses").  In these appeals, we consider whether the Court of Appeals erred in holding that Gregory did not knowingly, intelligently, and voluntarily waive his right to speedy trial on the burglary offenses.  We further consider whether the Court of Appeals erred in holding that the rule of Edwards v. Arizona, 451 U.S. 477 (1981), did not prohibit police-initiated questioning of Gregory on January 16, 1998, when there had been a break in

custody between successive interrogations concerning the murder offenses.

## I. Facts and Procedural History

### a. Investigation

On December 31, 1997, police found the dead body of James Michael Lambrecht ("Lambrecht") in the backseat of a blue Ford Escort. Lambrecht had two gunshot wounds to the head. Lambrecht's wife told the investigating officers that Lambrecht sold marijuana, and she provided the officers with his address book that contained a list of his customers. The list included the name "Jason," whom the police later determined was Gregory.

At some time prior to January 4, 1998, Detective Elizabeth R. Baker ("Detective Baker") left a message at Gregory's home requesting that he contact her. Gregory responded on January 4, 1998. Detective Baker and Detective Steve Smith ("Detective Smith") went to Gregory's home. Upon request by the detectives, Gregory voluntarily accompanied them to the police station. Gregory was transported in a marked police car. He was not placed under formal arrest or handcuffed, and he rode to the police station in the front seat of the car. At that time, both detectives and Gregory knew that there was an outstanding capias for Gregory's arrest on unrelated charges.

At the police station, without advising Gregory of his Miranda rights, Detectives Baker and Smith questioned Gregory about Lambrecht's murder. Detective Smith told Gregory that he had interviewed one of Gregory's co-workers who saw Lambrecht the night before he was killed. The co-worker described a person he saw seated in the back seat of Lambrecht's car. Detective Smith told Gregory that he matched the description of that person, which included a sweatshirt matching the one Gregory was wearing during the interview. Gregory then stated, "I think I should talk to my lawyer." Detective Smith asked, "Why? Have you done something wrong?" The detectives continued their questioning of Gregory and did not advise him of his Miranda rights at any time on that occasion. During the remainder of the interview, Gregory did not mention an attorney again, nor did he admit to murdering Lambrecht.

After the interrogation, Gregory was not released. Rather, he was brought before a magistrate who served him with the outstanding capias. Gregory was released on bond the following day. The police had no further contact with Gregory until January 16, 1998.

On January 15, 1998, the Redeemer Lutheran Church in Chesterfield County was burglarized and $60,000 worth of church property was stolen or vandalized. During the

3

investigation, the police interviewed an employee of a convenience store near the church who informed them that on the evening of the burglary, a man had tried to buy batteries for a radio that matched the description of a radio stolen from the church. The police viewed the store's security camera videotape and identified Gregory as the man who had attempted to buy the batteries.

On January 16, 1998, Jeff Able ("Able") told Detective Baker that on the day before Gregory had informed Able that he had burglarized the church. Additionally, Able told Detective Baker that Gregory admitted that he and Michael Sammons ("Sammons") had killed Lambrecht. The police then arrested Sammons, who quickly implicated both himself and Gregory in the murder.

On January 16, 1998, Gregory was arrested for the burglary of the church and taken to police headquarters. He was advised of his Miranda rights, both orally and in writing, and signed a waiver form before questioning began. During this interrogation, Gregory confessed to shooting Lambrecht. After the confession, he was arrested and charged with the murder offenses.

b. Pretrial and Trial Proceedings

Gregory was represented by three attorneys at various times during trial and related proceedings for the two sets of

4

offenses.  On July 20, 1998, the Grand Jury of the Circuit Court of Chesterfield County indicted Gregory on seven charges:

Murder offenses

1.  (CR98F01085-01) Capital Murder of James Lambrecht

2.  (CR98F01085-02) Use of a Firearm in the commission of murder of James Lambrecht

3.  (CR98F01085-03) Robbery of James Lambrecht

4.  (CR98F01085-04) Use of a Firearm in the commission of robbery of James Lambrecht

Burglary offenses

5.  (CR98F01086-01) Breaking and Entering Redeemer Lutheran Church

6.  (CR98F01086-02) Grand Larceny of property of Redeemer Lutheran Church

7.  (CR98F01086-03) Destruction of Property of Redeemer Lutheran Church  (Vandalism)

By order dated June 18, 1998, Wayne Morgan ("Morgan") was appointed by the circuit court to represent Gregory on six of the seven charges.[1]  By order dated July 24, 1998, Morgan was appointed to represent Gregory on the seventh charge as well.  By order dated July 24, 1998, the circuit court appointed Theodore Tondrowski ("Tondrowski") to represent Gregory as co-counsel on all seven charges.

At a hearing on January 26, 1999, the circuit court appointed Steven Benjamin ("Benjamin") as "lead co-counsel" on the four murder offenses only.[2]  Following this hearing, on February 1, 1999, Tondrowski moved to withdraw as counsel for Gregory on the murder offenses only, but his motion was denied.

A hearing on motions was held in the circuit court on October 19, 1998.  The record reflects that all seven charges were before the trial court.  The Commonwealth's Attorney announced that "the main reason we were going to be here, was the motion – the defendant was going to waive his right to speedy trial. . . ."  The trial court was occupied with the task of setting two trial dates: one for the burglary offenses and one for the murder offenses.  The task was further complicated by the scheduling of trials of co-defendants. Gregory and Tondrowski were present at the hearing, but Morgan was not present.  In response to the Commonwealth's statement of the main purpose of the hearing, Tondrowski stated, "Judge, as I understand it, Mr. Morgan talked to Mr. Gregory last time, and I wasn't there, but it's my understanding from Mr.

---

[1] Morgan had been previously appointed to represent Gregory on these charges by the General District Court on June 8, 1998.

[2] The order reflecting the appointment was dated June 25, 1999.

6

Morgan that Mr. Gregory is prepared to waive the speedy trial rights."

The Commonwealth first moved to continue the trial on the burglary offenses from February 1 to February 5, 1999.  When the trial court discussed this continuance to a particular date with counsel, the following exchange took place:

> Tondrowski:  Judge, the only problem I have with that is I have not discussed this issue with Mr. Morgan, and Mr. Morgan represents [Gregory] on the B&E's, and I do not.  That's the problem I have with it.

> The Court:  All right.  Well, we're going to set it for February the 5th.  That is the burglary case.

Despite Tondrowski's disclaimer of representation of Gregory on the burglary offenses, the various orders of appointment clearly establish that on October 19, 1998, both Tondrowski and Morgan represented Gregory on all seven charges before the trial court.

The Commonwealth then moved to set the trial on the murder offenses for February 22, 1999.  The trial court stated, "[a]ll right.  Mr. Tondrowski, have you had the opportunity to consult with your client?  I know you said Mr. Morgan had, but have you had the opportunity to consult with your client regarding waiver of speedy trial?"  The record of the proceedings shows that Tondrowski requested permission to discuss the issue with Gregory and a conference between

7

Tondrowski and Gregory took place.  After the conference,
Tondrowski replied to the trial court's question by stating,
"my client and Mr. Morgan . . . discussed it in great detail,
and my client is prepared to go forward with the waiver."

The trial court then engaged in the following exchange
with Gregory and counsel:

>THE COURT:      Is, Mr. Gregory, what your
>lawyer says correct?
>
>DEFENDANT GREGORY:  Yes, sir.
>
>THE COURT:      You wish to waive your
>right to speedy trial?
>
>DEFENDANT GREGORY:  Yes, sir.
>
>THE COURT:      And you've had extensive
>discussions with Mr. Morgan reference that
>waiver?
>
>DEFENDANT GREGORY:  I would not say
>extensive.
>
>THE COURT:      Well, have you had enough
>discussion that you are satisfied that
>that is what is in your best interest?
>
>DEFENDANT GREGORY:  He told me that that's
>what was in my best interest, if that's
>what you're asking.
>
>THE COURT:      And do you concur with
>that? Do you have any reason not to concur
>with it?
>
>DEFENDANT GREGORY:  No, sir.
>
>THE COURT:      So you will waive your
>right to a speedy trial?
>
>DEFENDANT GREGORY:  Yes, sir.

8

> THE COURT:    And, Mr. Tondrowski, having discussed that with your client, you would concur in his waiver?
>
> MR. TONDROWSKI:    I would concur, yes.
>
> THE COURT:    All right.  Then we'll continue the case over to begin on Monday, February 22nd, at 9:00 a.m.

On February 4, 1999, Gregory filed a motion to dismiss the burglary offenses claiming that his statutory right to a speedy trial pursuant to Code § 19.2-243 had been violated because he had been continuously incarcerated and more than five months had passed since the determination of probable cause in the General District Court on June 8, 1998.  This motion was filed and argued by Benjamin who had never been appointed to represent Gregory on the burglary offenses. Gregory maintained that the October 19, 1998 hearing only addressed waiver of speedy trial rights with respect to the murder offenses and not the burglary offenses.  Additionally, Gregory argued that, even if the record of the proceedings were interpreted to apply to both sets of offenses, the waiver of speedy trial rights with respect to the burglary offenses was ineffective because Morgan had not been present at the October 19, 1998 hearing.  According to Gregory, Morgan's absence violated his Sixth Amendment right to counsel;

9

therefore, his waiver could not have been knowing, intelligent, and voluntary.

At a hearing on the motion, Benjamin requested the Commonwealth to stipulate that Tondrowski "never represented Mr. Gregory on the burglary, grand larceny, and vandalism charges, and has never done anything – has never undertaken that representation." The trial court asked the Commonwealth if the stipulation was accepted. The Commonwealth declined to accept the stipulation and stated, "Judge, I would rely on the Court orders and what the record would reflect." Addressing Benjamin, the trial court stated, "[r]ely on what the records reflect, sir," to which Benjamin responded, "[a]ll right, sir."

The Commonwealth's response to the motion argued that Gregory clearly had talked to Morgan about speedy trial waiver, and that the trial court was correct "in considering Mr. Tondrowski to be representing [Gregory] on all charges" at the October 19, 1998 hearing. The trial court denied Gregory's motion to dismiss the burglary offenses.

Gregory was subsequently tried and convicted of burglary, vandalism, and grand larceny. At a separate trial, Gregory was tried and convicted of capital murder, robbery, and two counts of use of a firearm in the commission of a felony.

c. Appellate Proceedings

10

On appeal, in an unpublished opinion, the Court of Appeals reversed Gregory's convictions on the burglary offenses and affirmed Gregory's convictions on the murder offenses. With regard to the burglary offenses, the Court of Appeals held that Gregory was not tried within the time required by Code § 19.2-243 because more than five months had elapsed between the probable cause finding and the trial, and that Gregory had not waived his statutory speedy trial rights. The Court of Appeals held that the colloquy at the October 19, 1998 hearing did not address the burglary offenses, and that Morgan's absence from the hearing rendered ineffective any waiver that otherwise took place. Gregory v. Commonwealth, Record No. 1671-99-2, 2001 Va. App. LEXIS 125, at *13 (Mar. 13, 2001).

On appeal of the murder offenses to the Court of Appeals, Gregory argued that police violated his rights provided in Miranda v. Arizona, 384 U.S. 436 (1966) and Edwards v. Arizona, 451 U.S. 477 (1981), and that the trial court erred in failing to suppress evidence obtained from the interrogations on January 4 and January 16, 1998. The trial court had denied the motion to suppress. The trial court held that the interview on January 4, 1998 was non-custodial and that Gregory did not invoke his Fifth Amendment right to counsel during the interview; therefore, Miranda rights did

not attach.  Finding that Miranda warnings were given prior to the January 16, 1998 interview, the trial court held that Miranda rights were not violated, and because the prior interview was not custodial and there had been no prior invocation of the right to counsel, Edwards did not apply.

While affirming the trial court's denial of Gregory's motion to suppress, the Court of Appeals did not decide whether the January 4, 1998 interview was custodial in nature, nor did it decide whether Gregory invoked his right to counsel.  Rather, the Court of Appeals determined that any trial court error, if made, was harmless.  The Court of Appeals also held that a break in Gregory's custody between interviews made the requirements of Edwards inapplicable. Gregory, 2001 Va. App. LEXIS 125, at *21.

Gregory appealed the Court of Appeals' affirmance of the convictions on the murder offenses.  The Commonwealth appealed the Court of Appeals' reversal of the burglary offenses.  We awarded appeals to Gregory and the Commonwealth and we will affirm the murder convictions, but we will reverse the judgment of the Court of Appeals concerning the burglary convictions.

## II.  Speedy Trial

Gregory argues that the trial court erred in denying his motion to dismiss his burglary, grand larceny, and vandalism

charges because the Commonwealth failed to try him within five months of finding of probable cause in violation of Code § 19.2-243.

Code § 19.2-243 states, in part:

Where a general district court has found that there is probable cause to believe that the accused has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court; and if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense, he shall be forever discharged from prosecution therefor if no trial is commenced in the circuit court within nine months from the date such probable cause was found.

Code § 19.2-243(4), however, states that the provisions of the section do not apply if the failure to try the accused was caused:

By continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth, or by reason of his escaping from jail or failing to appear according to his recognizance.

The General District Court made its probable cause determination on June 8, 1998. Gregory argues that, absent agreement or waiver, the Commonwealth was required to try him

13

on or before November 7, 1998 or his prosecution would be barred on the burglary offenses.  Gregory maintains that there was no agreement to continue the case, nor was there an effective waiver of his speedy trial rights.  The Commonwealth argues that a waiver contemplated by Code § 19.2-243(4) occurred at the hearing on October 19, 1998.  We agree with the Commonwealth.

We recently restated that "[w]hen a defendant requests, agrees to, or acquiesces in an order that effectively continues a case, the five-month speedy trial period of Code § 19.2-243 is tolled during the time reasonably specified by the court to carry out the terms of its order."  Heath v. Commonwealth, 261 Va. 389, 393, 541 S.E.2d 906, 908 (2001).  Accordingly, because Gregory, with the benefit of advice of counsel, agreed to a continuance of the trial date or failed to object to the Commonwealth's request for a continuance, the period of time involved does not count in the computation of time for compliance with the requirements of Code § 19.2-243.

On October 19, 1998, all seven charges against Gregory were before the court for motions.  Gregory and Tondrowski were present; Morgan was not.  According to the court orders in the record of this case, on that date, Gregory was represented on all seven charges by both Morgan and Tondrowski.

14

The main purpose of the hearing as announced by the Commonwealth's Attorney was for Gregory to waive his rights to a speedy trial. Tondrowski's response assured the trial court of his understanding that Morgan had conferred with Gregory on the subject of speedy trial waiver when he stated, "it's my understanding from Mr. Morgan that Mr. Gregory is prepared to waive the speedy trial rights." There was no distinction made between burglary offenses and murder offenses in this colloquy.

The trial court proceeded to set the trial dates for each set of offenses separately. Upon selection of February 5, 1999, Tondrowski expressed concern, not about waiver of speedy trial rights, but about the availability of February 5, 1999 on Morgan's calendar. Such an understanding is consistent with the context of the exchange between Tondrowski and the trial court. Tondrowski had already communicated Morgan's agreement concerning waiver of speedy trial rights. The only remaining issue for discussion was the particular date for trial. Understandably, Tondrowski was not aware of Morgan's availability on February 5, 1999. The trial court set the date for the trial of the burglary offenses for February 5, 1999 and then set the trial of the murder offenses for February 22, 1999.

15

After determining both trial dates, the trial court addressed the speedy trial issue again. This colloquy made no distinction between burglary offenses and murder offenses. Having previously established that Morgan had discussed speedy trial issues with Gregory, the trial court focused upon Tondrowski's consultation with Gregory.

When asked if he had consulted with Gregory concerning "waiver of speedy trial," Tondrowski requested permission to confer with Gregory. The transcription in the record recites, "Mr. Tondrowski confers off the record with Defendant Gregory." When the hearing resumed, rather than directly answering the trial court's question about his own consultation with Gregory, Tondrowski reconfirmed Morgan's consultation with Gregory on the subject. Tondrowski again stated, "my client is prepared to go forward with the waiver."

The trial court asked Gregory if what Tondrowski said was correct. Confirming that it was correct, Gregory was asked directly, "[y]ou wish to waive your right to speedy trial?" He responded, "[y]es, sir." Once again the trial court turned to Tondrowski and asked, "[a]nd, Mr. Tondrowski, having discussed that with your client, you would concur in his waiver?" Tondrowski answered, "I would concur, yes."

Despite his later disclaimer, Tondrowski was counsel of record for Gregory on all seven charges on October 19, 1998.

16

More importantly, he acted as counsel to Gregory concerning speedy trial waiver during the hearing. The trial court order memorializing the rulings on October 19, 1998 specifically references all seven charges and with respect to all charges, expressly states: "The attorney for the defendant waived the right to a speedy trial."

We review the same trial record of the hearing on October 19, 1998 that was available to the Court of Appeals. Upon review of that record we hold that the Court of Appeals erred in determining that Gregory was not asked whether he wished to waive his speedy trial rights on the burglary offenses, and further erred in determining that Gregory was not represented by counsel on those charges. Because the period from October 19, 1998 to February 1, 1999 does not count toward the five-month period prescribed by Code § 19.2-243, Gregory was tried in compliance with the speedy trial statute.

III. Admissibility of January 16, 1998 Statements

Gregory argues that he was subjected to a custodial interrogation on January 4, 1998. He maintains that during the interrogation he clearly and unequivocally invoked his right to counsel. According to Gregory, police officers did not honor his request and continued to question him. After a break in custody, police officers initiated a second interrogation of Gregory on January 16, 1998. Gregory argues

17

that the trial court and the Court of Appeals erred in permitting the Commonwealth to introduce into evidence the statements he made on January 16, 1998, in violation of the rule established in Edwards.

The Commonwealth maintains that Gregory was not in custody during the initial interrogation on January 4, 1998, and furthermore, that Gregory did not clearly and unequivocally invoke his right to counsel. Even if the January 4, 1998 interrogation was custodial and Gregory requested counsel, the Commonwealth argues that a break in custody renders the Edwards rule inapplicable to the January 16, 1998 interrogation.

Edwards "established a second layer of prophylaxis for the Miranda right to counsel. . . ." McNeil v. Wisconsin, 501 U.S. 171, 176 (1991). The well-known rights provided by Miranda, 384 U.S. at 473-74, for a suspect in custody include: "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. . . . If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Edwards extended these principles to subsequent interrogation, holding that, ". . . an accused, . . . , having expressed his desire to deal with the police only through counsel, is not subject to further interrogation

18

by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. In Minnick v. Mississippi, 498 U.S. 146, 153 (1990), the Court clarified Edwards to require that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." Prior consultation with counsel is not a substitute for counsel's presence during interrogation. Id.

The underlying concern of Miranda, Edwards, and their progeny is the coercive atmosphere of custodial interrogation and the state of mind of the suspect. As the Court stated in Arizona v. Roberson, 486 U.S. 675, 681 (1988):

> Thus, the prophylactic protections that the Miranda warnings provide to counteract the "inherently compelling pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self-incrimination," are implemented by the application of the Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect. [citation omitted].

19

The right involved is the Fifth Amendment right against self-incrimination rather than the Sixth Amendment right to counsel.  The prophylaxis of Miranda and Edwards provides the right to have counsel present during interrogation as an additional safeguard in the exercise of the right against self-incrimination.  In contrast to the Sixth Amendment right to counsel which is offense-specific, the Fifth Amendment right against self-incrimination is not offense-specific.  Roberson, 486 U.S. at 685.  The Miranda-Edwards line of cases "focuses on the state of mind of the suspect and not of the police," and "there is no reason to assume that a suspect's state of mind is in any way investigation-specific." Id. at 687, 684.

The Edwards rule does not apply unless the prior interrogation was custodial and during that custodial interrogation, the suspect clearly and unequivocally invoked his right to counsel.  The Court of Appeals did not decide the question of custody and invocation of right to counsel.  Rather, the Court of Appeals utilized a harmless error analysis suggesting that nothing inculpatory came from the January 4, 1998 interrogation.  However, it is not the fruits of the investigation that are at issue; rather, it is the coercive atmosphere of the custodial interrogation itself.

20

We will assume without deciding that Gregory was in custody while being interrogated on January 4, 1998 and that he sufficiently invoked his right to counsel during that interview.  On January 16, 1998, Gregory was arrested for the burglary offenses and was taken to the same interrogation room used on January 4, 1998.  The interrogation was not initiated by Gregory.

The sole assignment of error concerning this matter is stated as follows: "The Court of Appeals erred in holding that the Edwards rule did not prohibit police-initiated interrogation on January 16, 1998."  Although the issue has never been presented to the United States Supreme Court, much has been made of dicta in Justice Scalia's majority opinion in McNeil:

> If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards.  This is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights."

McNeil, 501 U.S. at 177 (citation omitted).  Without some limitation upon the Edwards rule, such as consideration of a break in custody, its prohibition upon subsequent police-initiated interrogation illogically extends into perpetuity.

21

As Justice Scalia noted, "[t]he Edwards rule, moreover, is not offense specific: Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding any offense unless counsel is present." McNeil, 501 U.S. at 177.  This difficulty with the Edwards analysis was previously the subject of Justice Scalia's observations in Minnick, wherein he noted:

> In this case Minnick was reapproached by the police three days after he requested counsel, but the result would presumably be the same if it had been three months, or three years, or even three decades. This perpetual irrebuttable presumption will apply, I might add, not merely to interrogations involving the original crime, but to those involving other subjects as well.

Minnick, 498 U.S. at 163 (J. Scalia, dissenting).

Although the concern of Miranda, Edwards, and their progeny is the coercive circumstances of custodial interrogation and the state of mind of the suspect, it makes little sense to establish once and forever such circumstances and state of mind without consideration of intervening factors in the application of the Edwards rule.  Such an eminently reasonable interpretation was developed by the United States Court of Appeals for the Tenth Circuit in United States v. Bautista, 145 F.3d 1140, 1150 (10th Cir. 1998), wherein the court stated:

> Edwards is premised on the inherently coercive nature of custodial interrogation and is

22

designed to prevent the authorities from badgering a suspect in custody after the suspect has invoked his Miranda right to have an attorney present during questioning. Therefore, . . . in order for Edwards to apply, the suspect must be in custody from the time he invokes his right to the time when the subsequent interrogation is initiated. If custody is broken, especially for a lengthy period of time, the inherently coercive nature of custody itself is diminished and there is little to no risk of badgering by the authorities. This is not to say that the police can circumvent Edwards by temporarily releasing a suspect for a short period of time and then reacquiring him. Whether a break in custody is sufficient to remove a suspect's request for counsel from the ambit of Edwards must be evaluated under the totality of the circumstances.

At the beginning of the subsequent interrogation on January 16, 1998, police gave Gregory Miranda warnings orally and in writing and he executed a "waiver form" indicating that he was aware of his right to counsel. There is no issue concerning voluntariness. Gregory voluntarily confessed to the murder offenses during the subsequent interrogation. Considering a six-day break in custody, the court in Bautista held that the subsequent interrogation did not violate the rule in Edwards. Similarly, under the circumstances presented in this case, we hold that the twelve-day break in custody renders the rule in Edwards inapplicable to Gregory's subsequent interrogation. The Court of Appeals, although on

23

other grounds, did not err in affirming Gregory's convictions on the murder offenses.

## IV. Conclusion

For the reasons stated, the judgment of the Court of Appeals concerning the burglary offenses will be reversed and vacated and the judgment of the trial court will be reinstated.  The judgment of the Court of Appeals concerning the murder offenses will be affirmed.

Record No. 010636 – <u>Reversed and vacated</u>.
Record No. 011028 – <u>Affirmed</u>.