COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judges Benton and Petty
Argued by teleconference


COMMONWEALTH OF VIRGINIA
                                                        MEMORANDUM OPINION[*] BY
v.      Record No. 2783-06-4               CHIEF JUDGE WALTER S. FELTON, JR.
                                                                APRIL 10, 2007
CINDY CARRUITERO


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on briefs), for appellant.

Malik N. Drake for appellee.


Pursuant to Code § 19.2-398[1], the Commonwealth appeals a pretrial ruling granting Cindy

Carruitero's motion to suppress statements and evidence obtained during a search of her residence

pursuant to a search warrant based on her statements.  The Commonwealth contends the trial court

erred in finding that Carruitero's non-custodial request for an attorney prohibited law enforcement

officers from "speaking with her further" regarding her participation in a suspected gang-related

graffiti incident.  For the reasons that follow, we reverse the trial court's ruling and remand for

further proceedings consistent with this opinion.

I.  BACKGROUND

When a pretrial motion to suppress is reviewed on appeal, the burden is on the

Commonwealth to show that the ruling, when the evidence is considered in the light most favorable

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Court will review the Commonwealth's appeal of the pretrial suppression order
only insofar as it pertains to the felony indictment.

to the prevailing party below, here Carruitero, constituted reversible error.  Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998).  Although "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them," McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*), "we review *de novo* the trial court's application of defined legal standards . . . to the particular facts of the case." Medley v. Commonwealth, 44 Va. App. 19, 20, 602 S.E.2d 411, 415 (2004) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

So viewed, the evidence shows that Detective Claudio Saa of the Herndon Police Department telephoned Carruitero on November 25, 2005 regarding his investigation of an October 24, 2005 suspected gang-related graffiti incident.  He had "developed" Carruitero as a suspect after receiving a tip from a confidential informant.  During the telephone call, he advised Carruitero that she was a possible suspect in the case and that he wanted to conduct a voluntary interview with her to "clarify her involvement."  Carruitero told him that she "had already gotten into some trouble and that [she] didn't want to get [her]self into more trouble by saying something and that [she] wanted to talk to [her] lawyer."  Detective Saa requested the name and number of her lawyer so that he "could contact and try to set something up."  The telephone conversation then ended.

Approximately thirty minutes after the conclusion of the first telephone call, Carruitero telephoned Detective Saa and provided him with the name and telephone number of her attorney.  She also asked him "what the investigation was about."  He told her that it involved the destruction of property and 18th Street Gang graffiti, to which Carruitero responded, "I was there."  Detective Saa then ended the call.  The record contains no evidence that the detective contacted Carruitero's attorney.  He telephoned Carruitero later that evening and informed her that he still wished to speak with her regarding the graffiti incident.  She agreed to talk with him the following day, if he would come to her residence.

- 2 -

Detective Saa arrived at Carruitero's residence for the interview dressed in plain clothes. Carruitero, an adult, was present with both of her parents. Prior to commencing the interview, Detective Saa did not give Carruitero Miranda warnings, although he testified that he informed Carruitero that she was not obligated to speak with him and could stop the interview at any time. Carruitero's mother testified that Carruitero told the detective she wanted to speak with her attorney "before saying anything," and the detective responded by stating, "don't worry because nothing that you will say is going to be taken into consideration. This is just a friendly investigation that we are doing." However, when asked if she had "ever indicate[d] to [Detective Saa] that [she] wanted an attorney present[,]" Carruitero stated, "I said that to him on the phone, not when he was there because when he talked to me on the phone, he made it seem like he just wanted to come and talk not that, like, everything I say is going to come against you in court." Carruitero also testified she did not recall the detective saying she could stop the interview at any time.

During the interview, Carruitero made statements incriminating herself in the graffiti incident. Detective Saa told her that he "would be pressing charges, but [that] [he] would notify the Assistant Commonwealth's Attorney who would be on the case of her cooperation." He did not arrest her at that time. Some four months later on March 30, 2006, Detective Saa prepared an affidavit in support of a search warrant for Carruitero's residence. In the affidavit, he stated the incriminating statements Carruitero made during the interview were the basis for the search warrant. During the execution of the search warrant, unspecified inculpatory evidence was seized.

Carruitero was indicted for knowingly and willfully participating in the destruction of private property, committed for the benefit of, or at the direction of, or in association with a criminal street gang in violation of Code § 18.2-46.2, a felony, and unlawfully destroying or damaging private property valued less than $1,000 in violation of Code § 18.2-137, a misdemeanor.

On October 13, 2006, Carruitero moved to suppress her statements and the fruits of the search warrant, contending that her statements "were obtained in violation of the Fifth and Fourteenth Amendments of the United States and Article I of the Constitution of Virginia" and that the "[e]vidence resulting from [the] statements was obtained in violation of [her] right against self-incrimination." In response, the Commonwealth cited Miranda v. Arizona, 384 U.S. 436 (1966), and argued the statements were admissible because Carruitero was not in custody when she spoke with Detective Saa. At the suppression hearing, the Commonwealth argued there were "two particular issues here, one being the question of the voluntariness of [Carruitero's] statements[,]" and the other being that "[i]t doesn't appear . . . this is a situation where Miranda warning would apply . . . [because] [s]he wasn't in custody and [the detective] advised her that she wasn't under arrest."

Carruitero's attorney asserted that, "even if Your Honor is inclined to think . . . Miranda was not appropriate, those statements were obtained in bad faith." When he began to "move to the next point," the trial court interrupted, granting Carruitero's motion to suppress. Specifically, the trial court ruled that Carruitero invoked her Fifth Amendment right to counsel during the initial telephone conversation with Detective Saa when she stated she wanted to speak with her attorney. It found that her phone call providing her attorney's name and number did not constitute voluntary reinitiating contact with the detective and that the evidence obtained during the execution of the search warrant was suppressed under the "fruit of the poisonous tree" doctrine. Absent from the trial court's ruling was a finding that Carruitero was subjected to custodial interrogation when she stated her desire to consult with her attorney. The trial court did not address the voluntariness issue in its ruling.

II.  ANALYSIS

The Commonwealth's sole contention on appeal is that "the trial court erred in finding that Carruitero invoked her [Fifth Amendment] right to counsel and the police were then prohibited from further contact with her."

"The right of a criminal suspect to have an attorney present during custodial interrogation was first articulated by the Supreme Court in Miranda v. Arizona, 384 U.S. 436, 469-73 (1966)." Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005).  The Court

> held that, before an individual may be questioned by police, he must be warned of his right to remain silent and his right to [have] an attorney [present] only when that "individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning."

Bailey v. Commonwealth, 259 Va. 723, 745, 529 S.E.2d 570, 583 (2000) (quoting Miranda, 384 U.S. at 478).

In Edwards v. Arizona, 451 U.S. 477 (1981), the Court, in a post-arrest setting, "'established a second layer of prophylaxis for the Miranda right to counsel . . . [,]'" Commonwealth v. Gregory, 263 Va. 134, 146, 557 S.E.2d 715, 722 (2002) (quoting McNeil v. Wisconsin, 501 U.S. 171, 176 (1991)), holding that, "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85.

The protections afforded by Miranda, Edwards, and their progeny "appl[y] only when a suspect is subjected to custodial interrogation." Webber v. Commonwealth, 26 Va. App. 549, 557, 496 S.E.2d 83, 86 (1998) (citing Davis v. Allsbrooks, 778 F.2d 168, 170-71 (4th Cir. 1985)).  See also Tipton v. Commonwealth, 18 Va. App. 832, 835, 447 S.E.2d 539, 540 (1994)

(holding that "[t]he Edwards rule has not been expanded to include non-custodial demands for an attorney . . ."). The Commonwealth contends Detective Saa's initial telephone conversation with Carruitero, during which she stated she wanted to speak with her attorney, was non-custodial and therefore did not trigger the prophylactic protections of Miranda and Edwards.

Whether a suspect is "in custody" for purposes of Miranda and Edwards "is determined by the circumstances of each case, and 'the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.'" Aldridge v. Commonwealth, 44 Va. App. 618, 642, 606 S.E.2d 539, 551 (2004) (quoting Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 262 (1998)). See also California v. Beheler, 463 U.S. 1121, 1125 (1983). "In making that determination, the situation must be viewed from the vantage point of 'how a reasonable man in the suspect's position would have understood his situation.'" Wass v. Commonwealth, 5 Va. App. 27, 32, 359 S.E.2d 836, 839 (1987) (quoting Berkemer v. McCarty, 468 U.S. 420, 442 (1984)).

Courts must also consider "'a host of factors,'" id. (quoting United States v. Streijel, 781 F.2d 953, 961 (1st Cir. 1986)), when determining whether a suspect was "in custody" for Miranda and Edwards purposes. These factors include:

> (1) the manner in which the individual is summoned by the police, (2) the familiarity or neutrality of the surroundings, (3) the number of officers present, (4) the degree of physical restraint, (5) the duration and character of the interrogation, and (6) the extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.

Aldridge, 44 Va. App. at 642, 606 S.E.2d at 551 (citations omitted). "However, no single factor alone may necessarily establish custody . . . and not all factors may be relevant in a given case." Wass, 5 Va. App. at 33, 359 S.E.2d at 839.

The record reflects Detective Saa initially contacted Carruitero for a "voluntary interview" by telephone in order to "clarify her involvement" in the graffiti incident. She was

not restrained in any manner, and could have easily ended the conversation at any time by simply disconnecting the call. The duration of the telephone call was brief. Although Detective Saa did advise Carruitero that she was a suspect in the case, "'[e]ven a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest.'" Aldridge, 44 Va. App. at 646, 606 S.E.2d at 553 (quoting Stansbury v. California, 511 U.S. 318, 324-25 (1994)). See also Commonwealth v. Thornton, 24 Va. App. 478, 488, 483 S.E.2d 487, 492 (1997) ("[The application of Miranda [is not] triggered 'simply because the . . . questioned person is one whom the police suspect.'" (quoting Pruett v. Commonwealth, 232 Va. 266, 271, 351 S.E.2d 1, 4 (1986))). Considering these circumstances, a reasonable person would not have believed that Carruitero's "freedom of movement" was restrained [to] the degree associated with formal arrest. Aldridge, 44 Va. App. at 642, 606 S.E.2d at 551. Accordingly, Carruitero was not in custody during her initial telephone conversation with Detective Saa, and, therefore, the prophylactic protections of Miranda and Edwards were not triggered.

From the record presented, we conclude that the trial court erred in determining that Carruitero's request to speak with her attorney invoked her Fifth Amendment right to counsel and that Detective Saa was prohibited from further contact with her. Likewise, we conclude that the subsequent interview at Carruitero's residence was also non-custodial in nature. Consequently, the inculpatory statements Carruitero made during the interview are not inadmissible as the result of a Miranda or Edwards violation.

Carruitero argues on appeal that we should affirm the trial court's ruling because her inculpatory statements to Detective Saa were involuntary. As the trial court failed to address the issue of whether Carruitero's statements were voluntarily made, "there is no ruling for us to review on appeal." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998).

Accordingly, we will not consider the issue.  We therefore reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

_Reversed and remanded._