*17 UPON REHEARING EN BANC
ALSTON, Judge.
Jerrod Tyree Quarles appeals from his convictions for robbery and conspiracy to commit robbery. After granting his petition for appeal, a divided panel of this Court affirmed his convictions. See Quarles v. Commonwealth, No.1988-09-2, 2010 WL 3119283, at *2-3, 2010 Va.App. LEXIS 326, at *7 (Va.Ct.App. Aug. 10, 2010). Quarles’ petition for en banc review by this Court was then granted. Quarles argues that the trial court erred in denying his motion to suppress incriminating statements he made to the police during a custodial interrogation. Relying on Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, Quarles argues that a police detective impermissibly reinitiated communication with him after he invoked his right to counsel. We agree and hold that the police detective impermissibly reinitiated communication with Quarles after Quarles unequivocally requested the assistance of counsel. Accordingly, Quarles’ subsequent waiver of Miranda rights was not voluntary, and his subsequent incriminating statements were inadmissible.
I. BACKGROUND
On October 21, 2008, Quarles and an eleven-year-old boy (co-defendant) were arrested for robbery and conspiracy to commit robbery. The pair were transported to the police station, where they were separated. Officer Papeo stayed with Quarles in the main detectives’ office, where he informed Quarles of his Miranda rights. Quarles signed the waiver of rights form, but informed Officer Papeo that he wanted to speak to an attorney. Meanwhile, Detective Alston spoke with co-defendant for approximately forty-five minutes, during which time co-defendant confessed that he and Quarles had planned to “rob a white lady or white people in the YCU area” and that they had robbed the victim, whom co-defendant described as a “white lady.”
After obtaining co-defendant’s confession, Detective Alston joined Officer Papeo and Quarles in the detectives’ office. Officer Papeo gave Detective Alston Quarles’ signed waiver *18 form and informed Detective Alston that Quarles had invoked his right to counsel. Detective Alston then stated, “[Tjhat’s fíne if he doesn’t want to talk to me. I wasn’t the person that robbed a white lady and hit her in the head with a brick. If that’s the story you want to tell the judge[,] that’s fíne.”[1] Immediately after this exchange, Quarles told the officers that he wished to talk to them. Detective Alston responded, “No, that’s fine, you don’t have to talk to me, I’m good.” Quarles then again stated that he wanted to talk to them. Detective Alston informed Quarles that he must sign another waiver of rights form and that he must write on it that he wished to speak to the detectives. Quarles signed the form and wrote on the back that he had asked for an attorney, but had changed his mind and wished to speak to Detective Alston. Quarles subsequently admitted that he and co-defendant decided to “rob a white lady in the VCU area,” he gave co-defendant a knife, and he armed himself with a brick wrapped in a shirt. He stated that he hit the victim on the side of the head with the brick. The victim resisted, and Quarles and co-defendant fled the scene. Thereafter, the police arrested Quarles and co-defendant.
Prior to trial, Quarles moved to suppress the statements he made after he waived his right to counsel the second time. *19 During Quarles’ motion to suppress, Detective Alston stated on cross-examination that because Quarles was in the room, his statement regarding Quarles’ decision not to talk was directed at Quarles, as well as Officer Papeo. Detective Alston further testified that he referred to the victim as a “white lady” because co-defendant used that expression during his confession.
The trial court denied Quarles’ motion to suppress, finding that Detective Alston made his statement to Officer Papeo alone and that even if Detective Alston made his statement to Quarles, the statement “was not a reinitiation, and it was not a functional equivalent of interrogation.” The trial court further found that after invoking his right to counsel, Quarles reinitiated the conversation with Detective Alston and made a knowing and intelligent waiver of his right to counsel.
Quarles was subsequently convicted of robbery and conspiracy to commit robbery. This appeal followed.
II. ANALYSIS
“In reviewing a trial court’s denial of a motion to suppress, ‘[t]he burden is upon [the defendant] to show that the ruling, when th[e] evidence is considered most favorably to the Commonwealth, constituted reversible error.’ ” McGee v. Commonwealth, 25 Va.App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). In addition,
[w]e review the trial court’s findings of historical fact only for clear error. See Shears v. Commonwealth, 23 Va.App. 394, 398, 477 S.E.2d 309, 311 (1996). However, we review de novo the trial court’s application of defined legal standards to the particular facts of a case. Ornelas v. United States, 517 U.S. 690, 697 [116 S.Ct. 1657, 1662, 134 L.Ed.2d 911] (1996).
Ferguson v. Commonwealth, 52 Va.App. 324, 334, 663 S.E.2d 505, 510 (2008) (en banc), aff'd, 278 Va. 118, 677 S.E.2d 45 (2009).
*20 The Fifth Amendment provides that “[n]o person ... shall be compelled in any criminal case to be a witness against himself....” U.S. Const, amend. V. To guard against potential compulsion, the United States Supreme Court announced a number of rights to protect the Fifth Amendment privilege against self-incrimination, including the right to have an attorney present during custodial interrogation. Miranda, 384 U.S. at 469-73, 86 S.Ct. at 1625-27. Under Miranda, “[i]f [the accused] states that he wants an attorney, the interrogation must cease until an attorney is present.” Id. at 473-74, 86 S.Ct. at 1627-28.
In addition, “an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.” Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). Therefore, “when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.” Id. at 484, 101 S.Ct. at 1884-85.
Over time, what facts or circumstances amount to a constitutional violation have become more difficult to define. This Court in Ferguson, 52 Va.App. 324, 663 S.E.2d 505, provided a three-part analysis to determine the admissibility of a suspect’s statement under Edwards: *21 52 Va.App. at 335-36, 663 S.E.2d at 510 (citing Giles v. Commonwealth, 28 Va.App. 527, 532, 507 S.E.2d 102, 105 (1998)).
*20 First, the trial court must determine whether the accused “unequivocally” invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions or conversations with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel.
*21 This prophylactic rule reflects “[t]he underlying concern of Miranda, Edwards, and their progeny[:] the coercive atmosphere of custodial interrogation and the state of mind of the suspect.” Commonwealth v. Gregory, 263 Va. 134, 147, 557 S.E.2d 715, 722 (2002). The protections provided by Miranda
to counteract the “inherently compelling pressures” of custodial interrogation and to “permit a full opportunity to exercise the privilege against self-incrimination,” are implemented by the application of the Edwards corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities’ behest, and not at the suspect’s own instigation, is itself the product of the “inherently compelling pressures” and not the purely voluntary choice of the suspect.
Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 2097-98, 100 L.Ed.2d 704 (1988) (quoting Miranda, 384 U.S. at 467, 86 S.Ct. at 1624). Moreover, in a custodial setting, the use of ploys and other techniques of persuasion, no less than express questioning, may amount to interrogation. Rhode Island v. Innis, 446 U.S. 291, 299, 100 S.Ct. 1682, 1688-89, 64 L.Ed.2d 297 (1980).
In this case, it is undisputed that Quarles unequivocally invoked his right to counsel when he was alone in the detectives’ office with Officer Papeo. Our inquiry thus turns to whether Detective Alston engaged in an impermissible interrogation of Quarles after Quarles invoked his constitutional rights. See Edwards, 451 U.S. at 484-85, 101 S.Ct. at 1884-85; Ferguson, 52 Va.App. at 335-36, 663 S.E.2d at 510.
[T]he term “interrogation” under Miranda refers not only to express questioning, but also to any words or actions on the part of the police ... that the police should know are reasonably likely to elicit an incriminating response from *22 the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
Innis, 446 U.S. at 301-02, 100 S.Ct. at 1689-90 (footnotes omitted). “If a [suspect’s] statement is ‘not foreseeable, then it is volunteered.’ ” Gates v. Commonwealth, 30 Va.App. 352, 356, 516 S.E.2d 731, 733 (1999) (quoting Blain v. Commonwealth, 7 Va.App. 10, 15, 371 S.E.2d 838, 841 (1988)).
Furthermore, when determining whether the foreseeable response is incriminating, “ ‘no distinction may be drawn between inculpatory statements and statements alleged to be merely exculpatory.’ ” Innis, 446 U.S. at 301 n. 5, 100 S.Ct. at 1690 n. 5 (quoting Miranda, 384 U.S. at 477, 86 S.Ct. at 1629). This protective measure reflects the reality that “ ‘statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication.’ ” Id. (quoting Miranda, 384 U.S. at 477, 86 S.Ct. at 1629). As such, if a police officer should have known that his words were reasonably likely to elicit an attempt by a defendant to exculpate himself, those words constitute an interrogation. See id. at 301, 100 S.Ct. at 1689-90.
Based on these principles, we “focus[ ] primarily upon the perceptions of the suspect,” id., and determine, in this case, *23 whether Detective Alston’s words or actions constituted a coercive pressure “above and beyond that inherent in custody itself,” id. at 300, 100 S.Ct. at 1689.
Essentially, the Commonwealth argues on appeal that Detective Alston’s comment was, like the comments in Innis, simply an exchange of words between the officers, and thus should not be deemed a reinitiation of communication with Quarles. The salient facts in Innis are significant. In Innis, police officers were transporting Innis, a murder suspect, to the police station. Id. at 294, 100 S.Ct. at 1686. During a conversation between the officers en route, one officer expressed concern about the location of a missing firearm used in the crime because the crime had occurred near a school for handicapped children. Id. at 294-95, 100 S.Ct. at 1686-87. He said, “God forbid one of them might find the weapon with shells and they might hurt themselves.” Id. Innis then interrupted the officers and offered to show them the location of the firearm. Id. at 295, 100 S.Ct. at 1686-87.
The Supreme Court held that the conversation between the officers included no express questioning of Innis, but “[rjather, that conversation was, at least in form, nothing more than a dialogue between the two officers to which no response from the respondent was invited.” Id. at 302, 100 S.Ct. at 1690. Because no response from Innis was invited, the Supreme Court found that the officers’ conversation could be considered no more than “subtle compulsion.” Id. at 303, 100 S.Ct. at 1691. The Supreme Court stated that it was error to equate such “ ‘subtle compulsion’ with interrogation.”[2] Id. The Supreme Court held that because the officers should not have *24 known that their conversation was reasonably likely to elicit an incriminating response from Innis, the officers did not functionally interrogate him. Id. at 303, 100 S.Ct. at 1690-91.
Detective Alston’s statement is distinguishable from those in Innis. First, on its face, it was nominally directed at Quarles, as evidenced by Detective Alston’s use of the pronoun “you.” If Detective Alston was directing his comment solely at Officer Papeo, he would have chosen the pronoun “he,” rather than “you,” when he said, “If that’s the story you want to tell the judge[,] that’s fine.” Furthermore, at the motion to suppress hearing, Detective Alston acknowledged that he directed his statement, at least in part, to Quarles. In this way, Detective Alston’s comment was not part of a simple “dialogue between the two officers” like the exchange between the officers in Innis.
Second, when Detective Alston spoke to Quarles, he effectively informed Quarles of the evidence against him, using the specific terminology provided by Quarles’ co-defendant. The detective identified the victim in the case as a “white lady” after hearing co-defendant confess that Quarles and co-defendant’s plan was to “rob a white lady or white people in the VCU area.” In Miranda, the Supreme Court in dicta disapproved of police departments’ use of “lineups in which a coached witness would pick the defendant as the perpetrator.” Id. at 299, 100 S.Ct. at 1689 (citing Miranda, 384 U.S. at 453, 86 S.Ct. at 1616-17). The Innis Court recognized that this practice “was designed to establish that the defendant was in fact guilty as a predicate for further interrogation.” Id. (citing Miranda, 384 U.S. at 453, 86 S.Ct. at 1616-17). The detective’s words in the instant case had a remarkably similar effect. They amounted to a specific warning to Quarles that co-defendant had implicated Quarles in the robbery and the conspiracy to rob the victim.
The second half of Detective Alston’s statement, “If that’s the story you want to tell the judge[,] that’s fine,” challenged Quarles’ ability to exculpate himself. The detective’s statement was tantamount to a veiled threat signaling to Quarles *25 that unless he made a statement to the officers, the judge would look unfavorably upon Quarles, based on co-defendant’s confession.
Clearly, Detective’s Alston’s words rise above the mere “subtle compulsion” contemplated by the Supreme Court in tais. When we consider Detective Alston’s statements from Quarles’ perspective, we conclude Detective Alston should have known that his pointed criticism of Quarles’ defense was reasonably likely to elicit an incriminating response. The legal significance of Detective Alston’s unsolicited statements to Quarles can be resolved by consideration of analogous circumstances addressed by this Court sitting en banc in Ferguson, 52 Va.App. 324, 663 S.E.2d 505. In that case, after the defendant clearly invoked his right to counsel twice, the investigating officer continued to speak to the defendant. Id. at 331, 663 S.E.2d at 508. This Court found that the officer’s subsequent questioning was designed to elicit an incriminating response, when the officer informed the defendant that there was eyewitness testimony placing the defendant’s vehicle at the scene of the crime, told the defendant that “the only hope” for the defendant was to tell his side of the story, and questioned whether the defendant’s alibi would withstand scrutiny. Id. at 341, 663 S.E.2d at 513. Similarly, Detective Alston informed Quarles of co-defendant’s inculpatory statement and also suggested that Quarles would have no defense to present to the judge at trial.
Given the content and context of Detective Alston’s statement, the trial court erred in holding that his comment was not the functional equivalent of interrogation and that Quarles reinitiated communication by asserting his wish to talk.
Once an accused asserts his or her right to counsel, subsequent waiver of that right is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-Mirandized the accused, unless the statements are initiated by the defendant and shown to be based on a knowing, intelligent, and voluntary waiver.
*26 Giles, 28 Va.App. at 531, 507 S.E.2d at 105. Since Detective Alston reinitiated communication with Quarles after Quarles’ assertion of his right to the assistance of counsel, Quarles’ subsequent waiver of his Miranda rights was not voluntary. Id. Thus, his subsequent incriminating statements were inadmissible. It follows that the motion to suppress should have been granted and that the trial court’s denial of that motion was error.
III. CONCLUSION
We hold that the trial court erred in denying Quarles’ motion to suppress the statements he made to the officers. Accordingly, we reverse Quarles’ convictions and remand the case for a new trial if the Commonwealth be so advised.

Reversed and remanded.

. At the hearing on the motion to suppress, this statement was introduced through Detective Alston’s testimony, rather than through an audio or video recording. Although the detective initially testified that he used the pronoun "he” rather than "you,” the detective later acknowledged in response to questioning from both defense counsel and the prosecutor that he said, "If that’s the story you want to tell the judge that's fine.”
In making its ruling on the motion to suppress, the trial court found that Detective Alston said, ”[I]f that is what he wants to tell the judge!,] that’s fine.” On brief, the Commonwealth states that Detective Alston used the pronoun "you,” as opposed to "he,” as the trial court found. The Commonwealth also adopted this position before the panel of this Court. As such, the Commonwealth implicitly concedes that the trial court’s finding regarding Detective Alston’s use of the pronoun "he” was plainly wrong.
For the foregoing reasons, we reject the trial court’s finding that Detective Alston used the pronoun "he.” See Shears v. Commonwealth, 23 Va.App. 394, 398, 477 S.E.2d 309, 311 (1996).

. The Supreme Court noted in Innis another example of subtle compulsion:
By way of example, if the police had done no more than to drive past the site of the concealed weapon while taking the most direct route to the police station, and if the respondent, upon noticing for the first time the proximity of the school for handicapped children, had blurted out that he would show the officers where the gun was located, it could not seriously be argued that this "subtle compulsion” would have constituted "interrogation" within the Miranda opinion.
446 U.S. at 303 n. 10, 100 S.Ct. at 1691 n. 10.